**KANNER & WHITELEY, L.L.C.**
Allan Kanner (SBN 109152)
Conlee S. Whiteley (PHV Pending)
David J. Stanoch (PHV Pending)
a.kanner@kanner-law.com
c.whiteley@kanner-law.com
d.stanoch@kanner-law.com
701 Camp Street
New Orleans, LA 70130
(504) 524-5777

**BIZER & DEREUS**
Andrew Bizer (PHV Pending)
andrew@bizerlaw.com
3319 St. Claude Avenue
New Orleans, LA 70117
(504) 619-9999

**FARNESE P.C.**
Peter J. Farnese (SBN 251204)
pjf@farneselaw.com
700 S. Flower St., Suite 1000
Los Angeles, California 90017
(310) 356-4668

*Counsel for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ANTHONY DOMINICI, on behalf of himself and all others similarly situated,

Plaintiffs,

v.

THE HERSHEY COMPANY,

Defendants.

Case No. 2:24-cv-9414

**CLASS ACTION**

**CLASS ACTION COMPLAINT**

1. Breach Of Express Warranty
2. Breach Of Implied Warranty
3. Fraud (Affirmative Misrepresentation, Omission, And Concealment)
4. Negligent Misrepresentation And Omission
5. Violation Of Consumer Protection Law
6. Negligence
7. Unjust Enrichment

**JURY TRIAL DEMANDED**

Plaintiff Anthony Dominici ("Plaintiff") brings this action on behalf of themselves and all others similarly situated against Defendant, The Hershey Company ("Defendant" or "Hershey"). Plaintiff alleges as follows pursuant to the investigation by their counsel and based upon information and belief.

## NATURE OF THE ACTION

1. Plaintiff brings this Class action lawsuit on behalf of themself and similarly situated consumers ("Class Members") who purchased for personal, family, or household use, Defendant's chocolate or other confectionery products ("Confectionery Products"),[1] which are unfit ordinary purpose because the packaging in which they are wrapped and sold, which is essential and integral to the delivery of the product to Plaintiff and the Class, contain heightened levels of dangerous, unsafe organic fluorine and/or per- and polyfluoroalkyl substances ("PFAS").

2. PFAS are a group of synthetic chemicals which are harmful to both the environment and humans. PFAS persist and accumulate over time, and are harmful even at very low levels. Fluorine is an atomic element present in the molecular structure of PFAS.

3. PFAS is known as a "forever chemical" because its synthetic molecular structure is exceedingly strong, such that PFAS do not break down easily. This is particularly problematic toxic and carcinogenic.

4. As awareness of carcinogenic PFAS, or "forever chemicals," has grown, testing to determine the existence and levels of PFAS in consumer products and packaging has become more common. Recent tests have shown the existence of PFAS in the packaging of a number of consumer products.

[1] The Confectionery Products include but are not limited to Hershey Milk Chocolate Bar, Hershey Cookies n' Cream Bar, Hershey's Kisses, Reese's Peanut Butter Cups, Reese's Pieces, Almond Joy, Mounds, and KitKat Bar.

5. In response to the detection of PFAS in consumer products or their packaging, bans and phase-outs for plastic food and candy packaging have been introduced in multiple U.S. states. Additionally, as of February 2024, the United States Federal Food and Drug Administration, ("FDA") does not allow the intended use of PFAS in food packaging.

6. The Hershey Company is a publicly traded, iconic, multi-brand U.S. confectionery maker with a multi-billion dollar market share of the confectionery segment.

7. Notwithstanding the known dangers posed by PFAS and the recent FDA prohibition of PFAS in food packaging, recent independent testing has found heightened levels of PFAS in the wrappers or packaging for Hershey's Confectionery Products. Testing of the wrappers for Hershey's Confectionery Products revealed PFAS contamination over 10 mg/kg, and readings as high as 81.5 mg/kg of total fluorine.

8. Given the now heightened awareness of PFAS in the industry generally and in food packaging in particular, Hershey is undoubtably aware of the seriousness of PFAS, and is or should be monitoring or correcting the contamination of PFAS in its product wrappers and disallowing use of any contaminated wrappings. This is particularly so in that the PFAS within its wrappers are not necessary, are unsafe and have been banned by the FDA.

9. Hershey brands itself as a confectioner selling premium products of the utmost quality, spending extra effort to optimize the value impression of its packaging compared to its competitors. Hershey also touts the quality and safety of its products, including the Confectionery Products' wrappers, to convey a message to consumers that the Confectionery Products are safe, high-quality, merchantable, and free of any unwanted substances or contamination.

10. Yet, as the recent product testing reveals, Hershey's representations, warranties, statements, and disclosures are false and misleading. Contrary to the

foregoing, Hershey omits that the Confectionery Products' wrappers contain dangerous levels of PFAS and/or organic fluorine, and pose a substantial health risk to unsuspecting consumers. Neither before nor at the time of purchase does Hershey notify consumers like Plaintiff that the Confectionery Products are wrapped in unsafe and harmful wrappers that contain heightened levels of organic fluorine and/or PFAS.

11. Plaintiff brings this action for economic damages and injunctive relief on behalf of all persons who paid for Hershey's Confectionery Products. Hershey's wrongful conduct constitutes (i) breaches of express and implied warranties, (ii) fraud (affirmative misrepresentation and omission), (iii) negligent misrepresentation, (iv) a violation of the California Unfair Competition Law, Cal. Bus. Prof. Code § 17200, *et seq.*, California Consumer Legal Remedies Act, Cal Civ. Code §§ 1750, *et seq.*, and the California False Advertising Law, Cal. Bus. Prof. Code § 17500, *et seq.* (and other states' analogous non-conflicting consumer protection laws), (v) negligence, and (vi) unjust enrichment.

12. Accordingly, Plaintiffs bring their claims against Defendant individually and on behalf of a class of all other similarly situated as set forth below.

**THE PARTIES**

13. Plaintiff Anthony Dominici is a natural person and citizen of California. Plaintiff has purchased the Confectionery Products from Defendant for several years, including as recently as earlier this year when he purchased the Hershey's KitKat bar. Prior to his purchases, Plaintiff had reviewed the labeling, packaging, and marketing materials of the Products, including those set out herein, including that the Products were safe and sustainable. This includes the packaging which directs Plaintiff and other consumers to Defendant's website which in turn, sets forth Defendant's positions that, *inter alia*, it tries to avoid use of dangerous chemicals such as PFAS or fluorine, it goes beyond regulatory safety and quality standards, and that its highest priority is the safety and quality of its products so that consumers can rest assured they can enjoy Hershey's products without any risks. The wrappers for the

Confectionery Products purchased by Plaintiff also did not disclose anything about PFAS or fluorine.

14. Plaintiff understood that based on Defendant's assertions, that the Confectionery Products were safe for consumption, and otherwise sustainable products. Plaintiff reasonably relied on these representations and warranties in deciding to purchase the Confectionery Products, and these representations and warranties were part of the basis of the bargain in that Plaintiff would not have purchased the Products, or would not have purchased them on the same terms, if the true facts had been known. As a direct result of Defendant's material misrepresentations and omissions, Plaintiff suffered and continues to suffer, economic injuries.

15. Plaintiff's purchase and consumption of Confectionery Products has resulted in Plaintiff's suffering physical impact in the form of being exposed to a non-bargained for agent with potent mutagenic properties that operates at the cellular and sub-cellular levels, implicating future potential health consequences.

16. Although Plaintiff would not have purchased the Confectionery Products on the same terms had he known about the products' true condition, Plaintiff continues to desire to purchase the Confectionery Products from Defendant in the future. However, Plaintiff is unable to determine if the Products are actually safe and sustainable. Plaintiff understands that the composition and safety levels of the products may change over time. But as long as Defendant continues to market its products as, for example, "safe" and "sustainable," Plaintiff will be unable to evaluate the different prices between Defendant's Confectionery Products and competing products. Plaintiff is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Confectionery Products are marketed, labeled, packaged, and advertised as safe and sustainable, are in fact safe and sustainable. This is in fact possible because the PFAS or fluorine arise from the wrappers for the Confectionery Products, such as that the use of wrappers without

these substances may obviate the contamination without requiring a re-design of the confections themselves.

17. Defendant The Hershey Company ("Defendant") is a Delaware corporation with its principal place of business located at 19 East Chocolate Avenue, Hershey, PA 17033.

**JURISDICTION AND VENUE**

18. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and at least one Plaintiff, as well as most members of the proposed class, are citizens of different states than Defendant.

19. This Court has personal jurisdiction over Defendant because Defendant's principal place of business is located in this District, and at some of the acts and transactions giving rise to this action occurred in this District.

20. This Court is the proper venue for this action pursuant to pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is located in this District and because a substantial part of the events, omissions, and acts giving rise to Plaintiff's claims herein occurred in this District.

**COMMON FACTUAL ALLEGATIONS**

21. As noted above, PFAS are a group of synthetic chemicals which are harmful to both the environment and humans. Fluorine is an atomic element present in the molecular structure of PFAS. PFAS is known as a "forever chemical" because its synthetic molecular structure is exceedingly strong, such that PFAS do not break down easily. This is particularly problematic because PFAS are toxic and carcinogenic.

22. "PFAS have been shown to have a number of toxicological effects in laboratory studies and have been associated with thyroid disorders, immunotoxic effects, and various cancers in epidemiology studies."[2]

23. In fact, scientists are studying—and are extremely concerned about—how PFAS affect human health. Consequently, the Centers for Disease Control and Prevention ("CDC") outline "a host of health effect associated with PFAS exposure, including cancer, liver damage, decreased fertility, and increased risk of asthma and thyroid disease."[3]

24. As awareness of carcinogenic PFAS, or "forever chemicals," grows, testing to determine the existence and levels of PFAS in consumer products has become more common. Recent tests have shown the existence of PFAS in the packaging of a number of consumer products. PFAS in higher concentration usually originates from anti-grease and anti-soak coatings used in packaging that serve no direct function for consumers in food wrappers or their contents.

25. Using PFAS for food packaging is unnecessary because PFAS-containing (or fluorine-containing) materials does not need to be used in wrappers, nor do wrappers ordinarily need to be extra resistant to grease or water.

26. Because PFAS is unnecessary for the products or their packaging, the existence of PFAS in such wrappers is due to a lack of care in production processes or supply chains.

---

[2] Nicholas J. Heckert, et al. "Characterization of Per- and Polyfluorinated Alkyl Substances Present in Commercial Anti-fog Products and Their In Vitro Adipogenic Activity," Environ. Sci Technol. 2022, 56, 1162-1173, 1162.

[3] Harvard T.H. Chan Sch. Of Pub. Health. Health Risks of widely used chemicals may be underestimated (June 27, 2018), https://www.hsph.harvard.edu/news/hsph-in-the-news/pfas-health-risks-underestimated/ (last visited October 28, 2024).

27. Notably, as noted above, earlier this year the FDA has banned the use of PFAS in wrappers and similar food packaging. Upon information and belief, Hershey has not applied for or been granted authorization to use PFAS in wrappers for Confectionery Products.

28. In spite of the recognized risks and zero-utility of PFAS (or fluorine) containing wrappers, as well as the FDA ban, the wrappers for Hershey's Confectionery Products nonetheless contain alarmingly high levels of PFAS and fluorine.

29. As reported earlier this month, independent third-party testing reported the following for Hershey's Confectionery Products' wrappers:

| Confection | PFAS Compounds | Fluorine |
|---|---|---|
| Hershey Chocolate Bar | PFOS 17.2 mg/kg Lab_3 (Foil Test) | Florine 17.2 mg/kg Lab3_US |
| Hershey Cookies n' Cream Bar | PFOA 11.7 mg.kg Lab_3 (Foil Test) | Florine 11.7 Lab3_US |
| Hershey's Kisses | PFOA 13.5 mg/kg Lab_3 (Foil Test) | |
| Hershey's Kisses (foil/little white flag): | | Florine "High" Lab1_Ger; 15 mg/kg Lab2_Ger; 13.5 mg/kg Lab3_US |
| Reese's Peanut Butter Cups, paper cups | HFPO-DA 6.9 mg/kg; PFDA 1.2 mg/kg; PFHxS 2.5 mg/kg; PFNA 2.1 mg/kg; PFOA 14.0 mg/kg Lab_3 (other pkg test) | Florine 26.7 mg/kg Lab 3_US |
| Reese's Peanut Butter Cup (foil) | | Florine "High" Lab 1_Ger |
| Reese's Pieces | HFPO-DA 3.4 mg/kg; PFHxS 2.8 mg/kg; PFNA | Florine 19.5 mg/kg Lab2_Ger; 22.9 |

| | | |
|---|---|---|
| | 1.2 mg/kg; PFOA 14.1 mg/kg; PFOS 1.4 mg/kg (Foil test) | mg/kg Lab_3 US; 23.4 mg/kg Lab_4 Ch |
| Almond Joy | PFOA 3.1 mg/kg; PFOS 10.8 mg/kg Lab_3 (Foil Test) | |
| Almond Joy paper inlay | PFOS 2.9 mg/kg Lab_3 (other pkg test) | |
| Almond Joy/Mounds | | Florine: 14.5 mg/kg Lab2_Ger; 13.9 mg/kg Lab3_US; 33.2 mg/kg Lab_4 Ch |
| KitKat Bar | Not detected (Foil test) | Florine 12 mg/kg Lab2_Ger |

30. As the third-party testing reported, the significant signal in the data is that many of the products seem highly contaminated, and from a toxicological standpoint Hershey's products seem much worse than testing performed on competing products.

31. Troublingly, none of the above Confectionery Products should have contained any PFAS or fluorine in their wrappers, or the products themselves (due to exposure to the wrappers).

## CONCEALMENT AND TOLLING

32. Plaintiff's and Class Members' causes of action accrued not sooner than earlier this month with independent third-party testing revealed the PFAS and fluorine levels associated with the Confectionery Products and their wrappers. Plaintiff and other Class Members exercised reasonable diligence but could not discover the PFAS or fluorine contamination or Defendant's wrongful conduct, because Hershey's

wrongful acts were concealed from Plaintiff and the public, and facts pertinent to same were within Hershey's possession and control.

33. Alternatively, any statute of limitation or prescriptive period is equitably tolled because of fraudulent concealment. Defendant affirmatively concealed from Plaintiff and other Class Members its unlawful conduct. Defendant affirmatively strove to avoid disclosing its knowledge of its wrongful conduct, and of the fact that PFAS or fluorine was used and present in the Confectionery Products or their wrappers.

34. To the contrary, Defendant continued to represent and warrant that the Confectionery Products were safe, high quality, merchantable, and did not contain any dangerous undisclosed substances in the products themselves or their wrappers.

35. Because of this, Plaintiff and other Class Members did not discover, nor could they have discovered through reasonable and ordinary diligence, Defendant's deceptive, fraudulent, and unlawful conduct alleged herein. Defendant's false and misleading explanations, or obfuscations, lulled Plaintiff and Class Members into believing that the prices paid for Defendant's Confectionery Products were appropriate despite their exercise of reasonable and ordinary diligence.

36. As a result of Defendant's affirmative and other acts of concealment, any applicable statute of limitations affecting the rights of Plaintiff and other Class Members has been tolled. Plaintiff and other Class Members exercised reasonable diligence by, among other things, promptly investigating and bringing the allegations contained herein. Despite these or other efforts, Plaintiff were unable to discover, and could not have discovered, the unlawful conduct alleged herein at the time it occurred or at an earlier time so as to enable any complaint to be filed sooner.

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action both individually and as a class action pursuant to Fed R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) against Defendant on Plaintiff's own behalf and on behalf of the Class(es) defined below, to the extent

class members from these jurisdictions can be grouped together for purposes of class treatment:

> All individuals and entities in the United States and its territories and possessions who, within the applicable limitation periods to the present, paid any amount of money for Confectionery Products (intended for personal, family, or household use).

38. Plaintiff also alleges the following Subclasses:

> The California Subclass: All individuals and entities in California who, within the applicable limitation periods to the present, paid any amount of money for Confectionery Products (intended for personal, family, or household use).

> The Pennsylvania UTPCPL Subclass: All individuals and entities in the United States and its territories and possessions who, within the applicable limitation periods to the present, paid any amount of money for Confectionery Products (intended for personal, family, or household use).

> The Injunctive Relief Subclass: All individuals and entities in the United States and its territories and possessions who, within the applicable limitation periods to the present, paid any amount of money for Confectionery Products (intended for personal, family, or household use), and desire to purchase Confectionery Products in the future provided the products or their wrappers do not contain PFAS and/or fluorine.

39. Excluded from the Class(es) are: (a) any judge or magistrate presiding over this action, and members of their families; (b) Defendant and its employees, officers, directors, and agents; (c) Defendant's legal representatives, assigns, and successors; and (d) all persons who properly execute and file a timely request for exclusion form any Court-approved class.

40. Plaintiff reserves the right to narrow or expand the foregoing class definitions, or to create or modify subclasses as the Court deems necessary.

41. Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf of the Class(es).

42. **Numerosity**: While the exact number of class members cannot be determined without discovery, they are believed to consist of potentially millions of consumers nationwide. The Class(es) are therefore so numerous that joinder of all members is impracticable.

43. **Commonality**: Common questions of law and fact exist as to all class members, including, but not limited to:

a. Whether Defendant made express or implied warranties to Plaintiff and other class members regarding its Confectionery Products;

b. Whether Defendant's Confectionery Products or their wrappers contained undisclosed PFAS and/or fluorine impurities and the levels of such impurities;

c. Whether Defendant violated standards relating to the manufacture or testing of its Confectionery Products;

d. Whether Defendant falsely claimed that its Confectionery Products were merchantable, fit for intended purposes, and otherwise of the quality and composition represented;

e. Whether Defendant affirmatively or negligently misrepresented or omitted facts regarding its manufacture, sale, or testing of its Confectionery Products;

f. Whether Plaintiff and other class members have been economically, or are at greater risk of bodily injury in the future, as a result of Defendant's unlawful conduct, and the amount of their damages;

g. Whether a common damages model can calculate damages on a class-wide basis;

h. When Plaintiff's and other class members' causes of action accrued;

i. The scope of injunctive relief; and

j. Whether Defendant fraudulently concealed Plaintiff's and other class members' causes of action.

44. **Typicality**: Plaintiff's claims are typical of other class members' claims. Plaintiff and other class members all suffered the same type of economic harm. Plaintiff has substantially the same interest in this matter as all other class members, and their claims arise out of the same set of facts and conduct as the claims of all other class members.

45. **Adequacy of Representation**: Plaintiff is committed to pursuing this action and has retained competent counsel experienced in pharmaceutical litigation, consumer fraud litigation, class actions, and federal court litigation. Accordingly, Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of other class members. Plaintiff's claims are coincident with, and not antagonistic to, those of the other class members they seek to represent. Plaintiff has no disabling conflict with other class members and will fairly and adequately represent the interests of class members.

46. The elements of Rule 23(b)(2) are met. Defendant has acted on grounds that apply generally to all class members so that preliminary and/or final injunctive

relief and corresponding declaratory relief are appropriate respecting the Class(es) as a whole given the cohesiveness of same.

47. The requirements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. Although many other class members have claims against Defendant, the likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues would not be efficient, timely, or proper. Judicial resources would be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. In addition, individualized rulings and judgments could result in inconsistent relief for similarly situated plaintiffs. Plaintiff's counsel, highly experienced in pharmaceutical litigation, consumer fraud litigation, class actions, and federal court litigation, foresee little difficulty in the management of this case as a class action.

## CAUSES OF ACTION

### COUNT I - BREACH OF EXPRESS WARRANTY AGAINST DEFENDANT

48. Plaintiff alleges this claim for relief on behalf of themself and all similarly situated class members, both those in California and those in other states the laws of which do not conflict with California law.

49. Plaintiff incorporates the allegations in the above paragraphs as though fully set forth herein.

50. Plaintiff and each other class member as set forth in this subsection formed a contract with Defendant at the time they purchased Confectionery Products. The terms of the contract included the promises and affirmations of fact made by Defendant on the Confectionery Products' packaging and through marketing and advertising, including that the products would be of the quality and character as

represented. This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between class members and Defendant.

51. Defendant expressly warranted that its Confectionery Products were fit for ordinary use, were safe for their intended use, and did not contain any undisclosed impurities, substances, or risks.

52. Defendant sold Confectionery Products that it expressly warranted were manufactured and tested properly and did not contain any undisclosed impurities, substances, or risks. This includes statements in the product labeling and packaging, as referenced therein, that described the product as safe without disclosing the presence or levels of PFAS or fluorine.

53. Defendant's Confectionery Products did not conform to its express representations and warranties because the product was not manufactured, tested, or marketed properly to account for undisclosed impurities, substances, or risks. At all times relevant times, California and all other states had codified and adopted the provisions of the Uniform Commercial Code governing the warranty of merchantability and fitness for ordinary purpose.

54. At the time Defendant marketed and sold its Confectionery Products, Defendant recognized the purposes for which the products would be used and expressly warranted the products were manufactured properly, tested properly, and did not contain any undisclosed impurities, substances, or risks. These affirmative representations became part of the basis of the bargain in every purchase by Plaintiff and every other class member.

55. Defendant breached its express warranties with respect to its Confectionery Products as they were not of merchantable quality, were not fit for their ordinary purpose, and contained undisclosed impurities, substances, or risks..

56. Plaintiff and each other class member would not have purchased the Confectionery Shampoo Products had they known these drugs contained undisclosed

impurities, or that the products did not have the represented safety profile. Or, alternatively, Plaintiff and each other class member would have paid less for the Confectionery Products. In the further alternative, Plaintiff and each other class member would purchase the Confectionery Products in the future provided the PFAS and/or fluorine is eliminated from the products or their wrappers.

57. Direct privity exists between Defendant and Plaintiff and each other class member. Alternatively, direct privity is not required between Defendant and Plaintiff and each other class member because, among other things, Defendant is a manufacturer and made direct statements about the safety of its products and intended its statements and affirmations to flow to Plaintiff and to each other class member.

58. As a direct and proximate result of Defendant's breach of warranty, Plaintiff and each other class member have been injured and suffered damages in the amount of the purchase price of their medications, the purchase price of any replacement medications, and any consequential damages resulting from the purchases, in that the Confectionery Products they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

59. Although Plaintiff does not seek to recover for physical injuries, Defendant's Confectionery Products carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's bodies.

60. Pre-suit notice is not required, but even if it is, such notice was provided to Defendant.

**COUNT II - BREACH OF IMPLIED WARRANTY AGAINST DEFENDANT**

61. Plaintiff alleges this claim for relief on behalf of themself and all similarly situated class members, both those in California and those in other states, the laws of which do not conflict with California law.

62. Plaintiff incorporates the allegations in above paragraphs as though fully set forth herein.

63. Plaintiff and each other class member formed a contract with Defendant at the time they purchased the Confectionery Products. The terms of the contract include the promises and affirmations of fact made by Defendant on the Confectionery Products' packaging and through marketing and advertising, including that the product would be of the quality and character as represented. This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between class members and Defendant.

64. Defendant impliedly warranted that its Confectionery Products were fit for ordinary use, were safe for intended use, and did not contain any undisclosed impurities, substances, or risks. This includes statements in the product labeling and packaging, as referenced therein, that described the product as safe without disclosing the presence or levels of PFAS or fluorine.

65. At the time Defendant marketed and sold its Confectionery Products, Defendant recognized the purposes for which the products would be used and impliedly warranted the products were manufactured properly, tested properly, and did not contain any undisclosed impurities, substances, or risks. These affirmative representations became part of the basis of the bargain in every purchase by Plaintiff and every other class member.

66. At all times relevant times, California and all other states had codified and adopted the provisions of the Uniform Commercial Code governing the warranty of merchantability and fitness for ordinary purpose.

67. Defendant was a merchant within the meaning of the above statute.

68. Defendant's Confectionery Products constituted goods or products within the meaning of the products to which implied warranty attaches.

69. Defendant was obligated to provide Plaintiff and each other class member as set forth in this subsection reasonably fit Confectionery Products for the purpose for which the product was sold and to conform to the standards of the trade

in which Defendant is involved such that the product was of fit and merchantability quality.

70. Defendant knew or should have known that its Confectionery Products were being manufactured and sold for the intended purpose and impliedly warranted that its Confectionery Products were of merchantable quality and fit for that purpose.

71. Defendant breached its implied warranty because its Confectionery Products were not of merchantable quality, nor fit for the product's ordinary purpose, and did not conform to the standards generally applicable to such goods.

72. Plaintiff and each other class member would not have purchased the Confectionery Products had they known these products carried undisclosed risks, or, alternatively, would not have purchased them on the same terms (e.g., purchased them for substantially less). In the further alternative, Plaintiff and each other class member would purchase the Confectionery Products in the future provided the PFAS and/or fluorine is eliminated from the products or their wrappers.

73. To the extent applicable, direct privity is not required between Defendant and Plaintiff or other class members because, among other things, Defendant is a manufacturer and made direct statements about the safety of its products and intended its statements and affirmations to flow to Plaintiff and other class members. Further, Plaintiff and each other class member were intended third-party beneficiaries to the extent Defendant made any warranty or representation to a reseller who in turn resold Confectionery Products to consumers.

74. As a direct and proximate result of Defendant's breach of warranty, Plaintiff and each other class member have been injured and suffered damages in the amount of the purchase price of the Confectionery Products, in that the Confectionery Products they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

75. Although Plaintiff does not seek to recover for physical injuries, Defendant's Confectionery Products carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's bodies.

76. Pre-suit notice is not required, but even if it is, such notice was provided to each Defendant.

**COUNT III - FRAUD (AFFIRMATIVE MISREPRESENTATION, OMISSION, AND CONCEALMENT) AGAINST DEFENDANT**

77. Plaintiff alleges this claim for relief on behalf of themself and of all similarly situated class members, both those in California and those in other states, the laws of which do not conflict with California law.

78. Plaintiff incorporates the allegations in above paragraphs as though fully set forth herein.

79. Defendant affirmatively misrepresented material facts including, inter alia, that its Confectionery Products were not manufactured properly, were not tested properly, and contained any undisclosed impurities, substances, or risks.

80. Defendant omitted material facts including, inter alia, that its Confectionery Products were not manufactured properly, were not tested properly, and contained any undisclosed impurities, substances, or risks. This includes statements in the product labeling and packaging, as referenced therein, that described the product as safe without disclosing the presence or levels of PFAS or fluorine. Defendant's action had the effect of fraudulently inducing customers to pay in whole or in part for Defendant's Confectionery Products – products which it knew or should have known did not comply with the applicable standards and contained undisclosed PFAS or fluorine impurities.

81. Plaintiff and each other class member would not have purchased the Confectionery Products had they known these drugs contained undisclosed impurities

or that the products did not have the represented safety and quality profile. Or, alternatively, Plaintiff and each other class member would have paid less for the Confectionery Products. In the further alternative, Plaintiff and each other class member would purchase the Confectionery Products in the future provided the PFAS and/or fluorine is eliminated from the products or their wrappers.

82. Defendant knew, or reasonably should have known, that its misrepresentations were materially false or misleading or that the omission of material facts rendered such misrepresentations false or misleading.

83. Defendant also knew, or had reason to know, that its misrepresentations and omissions would induce the Class(es) to pay for some or all of the cost of its Confectionery Products.

84. Defendant's misrepresentations and omissions were material.

85. Defendant actively concealed its misrepresentations and omissions from the Class(es), government regulators, and the public.

86. To the extent applicable, Defendant intended its misrepresentations and omissions to induce Plaintiff, and each other class member as set forth in this sub-section, to pay for its Confectionery Products.

87. But for these misrepresentations and omissions, Plaintiff and each other class member as set forth in this sub-section, would not have paid for Defendant's Confectionery Products. Or, alternatively, Plaintiff and each other class member would have paid less for the Confectionery Products. In the further alternative, Plaintiff and each other class member would purchase the Confectionery Products in the future provided the PFAS and/or fluorine is eliminated from the products or their wrappers.

88. Defendant's conduct alleged herein demonstrates its intent to deceive Plaintiff and other class members. Defendant, inter alia, intentionally omitted material facts and made affirmative misrepresentations described herein about the Confectionery Products which it knew were false or inaccurate.

89. To the extent applicable, Plaintiff and each other class member as set forth in this sub-section, were justified in relying on Defendant's misrepresentations and omissions. The same or substantively identical misrepresentations and omissions were communicated to each Class(es) member, including through product labeling or other statements by Defendant. No reasonable consumer would have paid what they did for Defendant's Confectionery Products but for its unlawful conduct. To the extent applicable, reliance may be presumed in these circumstances.

90. Although Plaintiff does not seek to recover for physical injuries, Defendant's Confectionery carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's body.

91. Plaintiff and each other class member as set forth in this sub-section were damaged by reason of Defendant's misrepresentations and omissions alleged herein.

**COUNT IV - NEGLIGENT MISREPRESENTATION AND OMISSION**

92. Plaintiff alleges this claim for relief on behalf of themself and all similarly situated class members, both those in California and those in other states, the laws of which do not conflict with California law.

93. Plaintiff incorporates the allegations in above paragraphs as though fully set forth herein.

94. Defendant had or undertook a duty to accurately and truthfully represent the quality, nature, and characteristics of its Confectionery Products.

95. Defendant failed to exercise ordinary care in making or representing statements (or in failing to disclose facts) concerning the quality, nature, and characteristics of its Confectionery Products.

96. Defendant negligently misrepresented or omitted facts regarding the quality, nature, and characteristics of its Confectionery Products. This includes statements in the product labeling and packaging, as referenced therein, that described the product as safe without disclosing the presence or levels of PFAS or fluorine.

Defendant's action had the effect of fraudulently inducing customers to pay in whole or in part for Defendant's Confectionery Products – products which it knew or should have known did not comply with the applicable standards and contained undisclosed impurities.

97. Defendant knew, or reasonably should have known, that its representations alleged herein were materially false or misleading or that the omission of material facts rendered such representations false or misleading. Defendant also knew, or had reason to know, that its misrepresentations and omissions would induce Plaintiff and each other class member as set forth in this sub-section, to make purchases of Defendant's Confectionery Products.

98. As a direct and proximate result of Defendant's acts and omissions described herein, Plaintiff and each other class member as set forth in this sub-section have suffered harm and will continue to do so.

99. Defendant's misrepresentations or omissions were material and a substantial factor in Plaintiff's and other class members' paying for Confectionery Products.

100. Defendant intended its misrepresentations or omissions to induce Plaintiff and each other class member as set forth in this sub-section to make purchases of Confectionery Products, or had reckless disregard for same.

101. But for these misrepresentations (or omissions), Plaintiff and each other class member as set forth in this sub-section would not have made purchases of Defendant's Confectionery Products. Or, alternatively Plaintiff and each other class member would have paid less for Confectionery Products.

102. Defendant's conduct alleged herein demonstrates its intent to deceive Plaintiff and other class members. Defendant, inter alia, intentionally omitted material facts and made affirmative misrepresentations described herein about the Confectionery Products which it knew were false or inaccurate.

103. Plaintiff and each other class member as set forth in this sub-section were justified in relying on Defendant's misrepresentations or omissions. The same or substantively identical misrepresentations were communicated, and/or the same or substantively identical omissions were not communicated to each purchaser.

104. Defendant owed a special duty to Plaintiff and each other class member on account of the special relationship that existed between Defendant, as a seller of a product to be ingested. On account of the known or knowable application and use of the Confectionery Products, and Defendant's superior knowledge and position as manufacturer, distributor, and seller of the Confectionery Products, Defendant had a special duty to disclose risks to consumers such as Plaintiff and other class members.

105. Although Plaintiff does not seek to recover for physical injuries, Defendant's Confectionery Products carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's body.

106. Plaintiff and each other class member as set forth in this sub-section were damaged by reason of Defendant's misrepresentation or omissions alleged herein.

**COUNT V - VIOLATION OF CONSUMER PROTECTION LAW**

107. Plaintiff alleges this claim for relief on behalf of themself and all similarly situated class members, including the Pennsylvania Subclass, the California Subclass, and others in states whose laws do not conflict with California or Pennsylvania law.

108. Plaintiff incorporates the allegations in above paragraphs as though fully set forth herein.

109. Defendant has violated the consumer protection statutes as follows:

a. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code § 8-19-1, et seq.;

b. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, et seq.;

c. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Arizona Rev. Stat. § 44-1522, et seq.;

d. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, et seq.;

e. Defendant violated the California Unfair Competition Law by engaging in unfair or deceptive acts or practices in violation of Cal. Bus. Prof. Code § 17200, et seq.;

f. Defendant violated the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq.;[4]

g. Defendant violated the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq.;

h. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, et seq.;

i. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b, et seq.;

j. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code § 2511, et seq.;

k. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code § 28-3901, et seq.;

l. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, et seq.;

m. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. State 10-1-392, et seq.;

---

[4] Plaintiff only seeks injunctive relief at this time and has served a presuit notice and demand letter, and will amend the complaint after the statutory period to seek other damages under the CLRA as appropriate.

n. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480, et seq.;

o. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, et seq.;

p. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation 815 ILCS 505/1, et seq.;

q. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5.1, et seq.;

r. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code Ann. § 714H, et seq.;

s. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, et seq.;

t. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110, et seq.;

u. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, et seq.;

v. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 207, et seq.;

w. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, et seq.;

x. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, et seq.;

y. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, et seq.;

z. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325F.67, et seq.;

aa. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1, et seq.;

bb. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mo. Rev. Stat. § 407.0 10, et seq.;

cc. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, et seq.;

dd. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, et seq.;

ee. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, et seq.;

ff. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, et seq.;

gg. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Stat. Ann. § 56:8-1, et seq.;

hh. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. § 57-12-1, et seq.;

ii. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, et seq.;

jj. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, et seq.;

kk. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, et seq.;

ll. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, et seq.

mm. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. tit. 15 § 751, et seq.;

nn. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, et seq.;

oo. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, et seq.;

pp. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws § 6-13.1-1, et seq.;

qq. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, et seq.;

rr. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1, et seq.;

ss. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, et seq.;

tt. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, et seq.;

uu. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-11-1, et seq.;

vv. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. Tit. 9, § 2451, et seq.;

ww. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, et seq.;

xx. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010, et seq.;

yy. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101, et seq.;

zz. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, et seq.;

aaa. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. § 40-12-100, et seq.; and

bbb. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 23 L.P.R.A. § 1001, et seq., the applicable statute for the Commonwealth of Puerto Rico.

110. Defendant's conduct constitutes trade or commerce or other actionable activity within the meaning of the above statutes.

111. Defendant, directly or through its agents, employees, and/or subsidiaries, violated the state statutes by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Confectionery Products, including that: such products were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, and/or contained levels of PFAS or fluorine that rendered them unsafe and unfit.

112. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the Confectionery Products, as detailed above, Defendant engaged in one or more unlawful practices in violation of the above state statutes. Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of the Confectionery Products were disseminated to Plaintiff and each other class member as set forth in this sub-section in a uniform manner. Defendant sold Confectionery Products that it expressly warranted were manufactured and tested properly and did not contain any undisclosed impurities, substances, or risks. This includes statements in the product labeling and packaging that described the product as safe without disclosing the presence or levels of PFAS or fluorine.

113. Defendant's conduct as alleged herein constitutes unfair, deceptive, misleading, or otherwise actionable practices as to Defendant's conduct concerning the ingredients and safety profile for the Confectionery Products. Defendant promised a safe product, but the products were not as promised because their actual safety profile was not the same as that represented and bargained for.

114. To the extent applicable, Defendant knew, intended, or should have known that its fraudulent and deceptive acts, omissions, or concealment would induce reliance and that reliance can be presumed under the circumstances. As a direct and proximate result of Defendant's unfair methods of competition and unfair or deceptive

acts or practices, Plaintiff and other class members have suffered damages – an ascertainable loss – in an amount to be proved at trial.

115. Defendant engaged in unlawful conduct by deliberately and knowingly engaging in misleading, deceptive, and false statements regarding the Confectionery Products in the course of Defendant's business. Specifically, Defendant represented that the Confectionery Products were safe and did not carry any undisclosed risks. But this was not the case, as the products carried health risks that were not disclosed. Defendant made these misrepresentations, or omitted material information, in its marketing the Confectionery Products, and in the Products' packaging, labeling, and other materials.

116. The existence of undisclosed risks would have been material to Plaintiff and other class members.

117. Plaintiff and other class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information in that Plaintiff and other class members would not have purchased the Confectionery Products, or, alternatively, would not have purchased on the same terms (e.g., purchased them for substantially less), had they known the truth. In the further alternative, Plaintiff and each other class member would purchase the Confectionery Products in the future provided the PFAS and/or fluorine is eliminated from the products or their wrappers.

118. Although Plaintiff does not seek to recover for physical injuries, the Confectionery Products carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's body.

119. To the extent applicable, pre-suit notice and/or a demand letter was sent to Defendant prior to the filing of the Complaint.

**COUNT VI – NEGLIGENCE**

120. Plaintiff alleges this claim for relief on behalf of themself and all similarly situated class members, both those in California and those in other states, the laws of which do not conflict with California law.

121. Plaintiff incorporates the allegations in above paragraph as though fully set forth herein.

122. Defendant owed a duty to Plaintiff and each other class member to ensure its Confectionery Products were safe, were manufactured properly, were tested properly, and did not contain any undisclosed impurities, substances, or risks.

123. Defendant owed a duty to Plaintiff and each other class member because the latter were foreseeable, reasonable, and probably users of Confectionery Products, and victims of Defendant's deceptive and wrongful conduct. Defendant knew, or should have known, that its Coal Tar Shampoo Products were not safe, were not manufactured properly, were not tested properly, and contained undisclosed risks.

124. Defendant inadequately oversaw its own manufacture, distribution, marketing, and sale of its Confectionery Products, resulting in the Confectionery Products being sold to consumers without disclosure of the true character of the product.

125. Defendant maintained or should have maintained a special relationship with Plaintiff and each other class member, who were anticipated or intended direct and intended third-party beneficiaries, as it was obligated to ensure that its Confectionery Products were safe, were manufactured properly, were tested properly, and did not contain any undisclosed risks.

126. Defendant's own actions and inactions created a foreseeable risk of harm to Plaintiff and each other class member.

127. Defendant breached duties owed to Plaintiff and each other class member by failing to exercise reasonable care sufficient to protect the interests and meet the needs of Plaintiff and each other class member.

128. Defendant's conduct constitutes negligence per se given the FDA's ban on PFAs and/or fluorine in food product wrappers, and analogous state bans.

129. Although Plaintiff does not seek to recover for physical injuries, the Confectionery Products carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's body.

130. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and each other class member suffered injury and are entitled to damages in an amount to be proven at trial.

**COUNT VII – UNJUST ENRICHMENT**

131. Plaintiff alleges this claim for relief on behalf of themself and all similarly situated class members, both those in California and those in other states, the laws of which do not conflict with California law.

132. Plaintiff incorporates the allegations in above paragraphs as though fully set forth herein.

133. Defendant was unjustly enriched at the expense of Plaintiff and each other class member by virtue of their paying for Defendant's Confectionery Products. Plaintiff and each other class member conferred a direct benefit on Defendant by purchasing Defendant's Confectionery Products either directly from Defendant or through a reseller.

134. Defendant profited immensely from selling the Confectionery Products that carried undisclosed risks, that were not manufactured properly, and that were not tested properly.

135. Plaintiff and each other class member were unjustly deprived of money obtained by Defendant as a result of the improper amounts paid for Confectionery Products. It would be inequitable and unconscionable for Defendant to retain the profit, benefit, and other compensation obtained from Plaintiff and each other class member as a result of Defendant's wrongful conduct alleged.

136. In the alternative to the other causes of actions alleged herein, Plaintiff and each other class member have no adequate remedy at law.

137. Although Plaintiff does not seek to recover for physical injuries, Confectionery Products carried undisclosed risks and resulted

138. in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's body.

139. Plaintiff and each other class member are entitled to seek and do seek restitution from Defendant as well as an order from this Court requiring disgorgement of all profits, benefits, and other compensation obtained by Defendant by virtue of its wrongful conduct.

**PRAYER FOR RELIEF**

For these reasons, Plaintiffs prays for the following judgment:

i. An order certifying this action as a class action;

ii. An order appointing Plaintiffs as Class Representative, and appointing undersigned counsel as Class Counsel to represent the Class;

iii. A declaration that Defendant is liable under each and every one of the above-enumerated causes of action;

iv. An order awarding appropriate preliminary and/or final declaratory and injunctive relief against the conduct of Defendant described above, including but not limited to (in addition or in alternative to other damages sought) corrective labeling and/or corrective practices to not use PFAs and/or fluorine as to the Confectionery Products;

v. Payment to Plaintiffs and Class Members of all damages, exemplary or punitive damages, and/or restitution associated with the conduct for all causes of action in an amount to be proven at trial, including but not limited to the full amounts paid for the Confectionery Products or, alternative, an amount less than the full amounts paid for the

Confectionery Products that justly compensates for the depreciation in value as a result of Defendant's wrongful conduct;

vi. An award of attorneys' fees, expert witness fees, and costs, as provided by applicable law or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the Class Members;

vii. An award of statutory penalties to the extent available;

viii. Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

ix. Such other and further relief as this Court may deem just, equitable, or proper.

**JURY DEMAND**

Plaintiffs respectfully request a trial by jury on all causes of action so triable.

Respectfully submitted,

DATED: October 31, 2024

KANNER & WHITELEY, L.L.C.

By: */s/ Allan Kanner*
Allan Kanner

Allan Kanner (SBN 109152)
Conlee S. Whiteley (PHV Pending)
David J. Stanoch (PHV Pending)
a.kanner@kanner-law.com
c.whiteley@kanner-law.com
d.stanoch@kanner-law.com
701 Camp Street
New Orleans, LA 70130
(504) 524-5777

FARNESE P.C.
Peter J. Farnese (SBN 251204)
pjf@farneselaw.com
700 S. Flower St., Suite 1000
Los Angeles, California 90017
(310) 356-4668

BIZER & DEREUS
Andrew Bizer (PHV Pending)
andrew@bizerlaw.com
3319 St. Claude Avenue

New Orleans, LA 70117
(504) 619-9999

**CLRA VENUE DECLARATION PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(D)**

I, Alan Kanner, declare as follows:

1. I am counsel for Plaintiffs, and I am a partner at Kanner & Whiteley, L.L.C. I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2. The complaint filed in this action is filed in the proper place for trial because many of the acts and transactions giving rise to this action occurred in this District, and because Plaintiff resides in this District.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, executed on October 31, 2024, at New Orleans, Louisiana.

*/s/ Allan Kanner*
Allan Kanner